UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

DORAANNE PEREZ,

    Plaintiff,

v.                                                           CIV 15-0429 MCA-KBM

CAROLYN W. COLVIN,
Acting Commissioner of Social
Security Administration,

    Defendant.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

THIS MATTER is before the Court on Plaintiff's Motion to Reverse or Remand Administrative Agency Decision *(Doc. 27)* filed on November 19, 2015. Chief Judge Armijo entered an Order of Reference Relating to Social Security Appeals on November 10, 2015, referring this case to the undersigned Magistrate Judge "to conduct hearings, if warranted, including evidentiary hearings, and to perform any legal analysis required to recommend to the Court an ultimate disposition of the case." *Doc. 24.* Having considered the record, submissions of counsel, and relevant law, the Court recommends that Plaintiff's motion be **DENIED**.

**I.**     **Procedural History**

On April 23, 2012, Ms. Doraanne Perez (Plaintiff) protectively filed applications with the Social Security Administration for Supplemental Security Income (SSI) under

Title XVI of the Social Security Act. Administrative Record[1] ("AR") at 63–75. The earliest date Plaintiff could have been found to be disabled was April 23, 2012.[2] The agency denied Plaintiff's claims initially (AR at 29-32) and upon reconsideration (AR at 39-42), and Plaintiff requested a hearing with an Administrative Law Judge (AR at 43).

After a *de novo* hearing at which Plaintiff testified (*see* AR at 619-49), Administrative Law Judge Barry O'Melinn (the ALJ) issued an unfavorable decision on December 8, 2014 (AR at 10-25). Plaintiff submitted a Request for Review of the ALJ's decision to the Appeals Council (AR at 8-9), which the council denied on April 14, 2015 (AR at 5-7). Consequently, the ALJ's decision became the final decision of the Commissioner. *Doyal v. Barnhart*, 331 F.3d 758, 759 (10th Cir. 2003).

## II.   Applicable Law and the ALJ's Findings

A claimant seeking disability benefits must establish that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. § 404.1505(a). The Commissioner must use a sequential evaluation process to determine eligibility for benefits. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see also Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009).

---

[1] Documents 16-1 through 16-12 comprise the sealed Administrative Record. *See Doc. 16*. The Court cites the Administrative Record's internal pagination, rather than the CM/ECF document number and page.
[2] Plaintiff alleged an onset date of October 1, 2011, on her application. AR at 63. Under Title XVI, however, "there is no retroactivity of payment." Soc. Sec. Ruling, SSR 83-20, Titles II & XVI: Onset of Disability, 1983 WL 31249, at *1 (Jan. 1, 1983).

The claimant has the burden at the first four steps of the process to show: (1) she is not engaged in "substantial gainful activity"; (2) she has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and (3) her impairment(s) meet or equal one of the listings in Appendix 1, Subpart P of 20 C.F.R. Pt. 404; or (4) pursuant to the assessment of the claimant's residual functional capacity (RFC), she is unable to perform her past relevant work. 20 C.F.R §§ 404.1520(a)(4)(i-iv), 416.920(a)(4)(i-iv); *see also Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005) (citations omitted). "RFC is a multidimensional description of the work-related abilities [a claimant] retain[s] in spite of [her] medical impairments." 20 C.F.R. § 404, Subpt. P, App. 1 § 12.00(B); *see also* 20 C.F.R. §404.1545(a)(1). If the claimant meets "the burden of establishing a prima facie case of disability[,] . . . the burden of proof shifts to the Commissioner at step five to show that the claimant retains sufficient residual functional capacity . . . to perform work in the national economy, given his age, education, and work experience." *Grogan*, 399 F.3d at 1261 (citing *Williams v. Bowen*, 844 F.2d 748, 751 & n.2 (10th Cir. 1988) (internal citation omitted)); *see also* 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

At Step One of the process, ALJ O'Melinn noted that Plaintiff worked during three quarters of 2012 an average of 20 hours per week as a caregiver for Coordinated Home Health Care. AR at 15. Plaintiff did not work in 2013. AR at 15. In May 2014, she began working again as a caregiver for Mountain Shadows Home Care, spending 20 hours per week caring for her grandson. AR at 15. Throughout her employment from 2012 through the time of the ALJ's opinion, Plaintiff's income remained lower than the 2012

substantial gainful activity amount of $1,010 per month. AR at 15. The ALJ opined that the fact Plaintiff "has been working is inconsistent with her allegation that she is totally disabled. If this work were done on a full-time basis, it would be substantial gainful activity." AR at 15. Ultimately, the ALJ found that Plaintiff "has not engaged in substantial gainful activity since" her application date. AR at 15 (citing 20 C.F.R. § 416.971).

At Step Two, ALJ O'Melinn concluded that Plaintiff "has the following severe impairments: degenerative disc disease involving the cervical, lumbar and thoracic spine; rheumatoid arthritis; fibromyalgia; carpal tunnel syndrome; foot arthralgias; obesity; DeQuervain's syndrome and anxiety." AR at 15 (citing 20 C.F.R. § 416.920(c)). The ALJ noted that Plaintiff "has also been diagnosed with eczema; vitiligo; . . . insomnia; and a history of an upper respiratory infection." AR at 15. He found, however, that "there are no work related functional limits that attend these disorders. Thus, [the ALJ found that] these conditions are non-severe." AR at 15. The ALJ also noted two other complaints that he determined were non-severe: a left-shoulder injury and recent visual impairments. AR at 15.

At Step Three, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in" 20 C.F.R. Part 404, Subpart P, Appendix 1. AR at 17 (citing 20 C.F.R. §§ 416.920(d), 416.925, 416.926)). The ALJ considered the following listings in reaching his conclusion: 1.04 (disorders of the spine), 11.14 (peripheral neuropathies), 14.09 (inflammatory arthritis), and 12.06 (anxiety disorders). AR at 17. With respect to Plaintiff's mental impairments, the ALJ found that Plaintiff has mild restrictions in

activities of daily living and social functioning, moderate difficulties with respect to concentration, persistence, or pace, and no episodes of decompensation that have been of extended duration. AR at 19–20. Because Plaintiff's "mental impairments do not cause at least two 'marked' limitations or one 'marked' limitation and 'repeated' episodes of decompensation," the ALJ found that the paragraph B criteria are not satisfied. AR at 20; *see also* 20 C.F.R. Pt. 404, Subpart P, App. 1 § 12.06(B). The ALJ also found that the evidence of record "fails to establish the presence of the 'paragraph C' criteria[,]" (AR at 20) which requires a "complete inability to function independently outside the area of one's home." 20 C.F.R. Pt. 404, Subpart P, App. 1 § 12.06(C). The ALJ determined that because Plaintiff "ventures into public to acquire domestic goods, occasionally works as a caregiver[,] and interacts cordially with medical personnel[,]" she clearly does not have the "degree of dysfunction" required to meet the criteria of paragraph C. AR at 20.

At Step Four, ALJ O'Melinn found that Plaintiff "has the residual functional capacity to perform sedentary work[,] . . . except she may handle and finger objects frequently rather than constantly." AR at 20. "She may climb ramps, balance, stoop, kneel, crouch and crawl frequently, but she may never climb ladders, ropes or scaffolds." AR at 20. "She is capable of understanding, carrying out and remembering detailed[,]" but not complex, instructions "and can make commensurate work-related decisions; respond appropriately to supervision, co-workers, and usual work situations; deal with routine changes in the work setting; and maintain concentration, persistence, or pace for up to and including two hours at a time with normal breaks throughout the workday." AR at 20–21. The ALJ considered Plaintiff's subjective complaints, including

her assertion that her physical pain and other symptoms "lead to anxiety, crying and self-isolation." AR at 21 (citing AR at 152). The ALJ found that while Plaintiff's "medically determinable impairments could reasonably be expected to cause [her] alleged symptoms[,]" Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible . . . ." AR at 21.

As grounds for his credibility determination, the ALJ noted that he did "not find it credible that a family member would entrust [Plaintiff] with care of her child, nor that claimant would accept such responsibility, knowing that she was unable to provide for the child" due to her alleged "physical and psychological problems . . . ." AR at 22. Plaintiff's "attempt to minimize her work" caring for a child with Asperger Syndrome "undermines her credibility." AR at 22. The ALJ found that while Plaintiff's anxiety is "a moderate hindrance to her ability to concentrate and maintain pace[,]" her "[a]llegations of constant crying and avoidance of social situations . . . are counteracted where [she] regularly participates in grocery shopping, appears alert at exams, and, apparently, would have continued as a caretaker in 2011 if the child had not entered school." AR at 22 (citing AR at 102). The ALJ also mentioned "[t]he most recent evaluation by Linda Daniels, Ph.D, states that the claimant is responding to treatment and [is] 'no longer overwhelmed by anxiety . . . .'"[3] AR at 22 (citing AR at 612).

The ALJ concluded that Plaintiff "is capable of performing [her] past relevant work as a telemarketer[,]" which she did from 2001-2008. AR at 24. Ultimately, ALJ O'Melinn concluded that Plaintiff "has not been under a disability, as defined in the

---

[3] ALJ O'Melinn ultimately gave Dr. Daniels' opinion little weight, as more fully described infra at Section IV. See AR at 23-24.

Social Security Act, since April 23, 2012, the date the application was filed . . . ." AR at 25 (citing 20 C.F.R. § 416.920(f)).

### III.    Legal Standard

The Court must "review the Commissioner's decision to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005) (internal citation omitted)). A deficiency in either area is grounds for remand. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161, 1166 (citation omitted). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Lax*, 489 F.3d at 1084 (quoting *Hackett*, 395 F.3d at 1172 (internal quotation omitted)). "It requires more than a scintilla, but less than a preponderance." *Id.* (quoting *Zoltanski v. FAA*, 372 F.3d 1195, 1200 (10th Cir. 2004) (alteration in original) (internal quotation omitted)). The Court will "consider whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases, but [it] will not reweigh the evidence or substitute [its] judgment for the Commissioner's." *Id.* (quoting *Hackett*, 395 F.3d at 1172 (internal quotation marks and quotations omitted)).

"The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." *Id.* (quoting *Zoltanski*, 372 F.3d at 1200 (internal quotation omitted)). The Court "may not 'displace the agenc[y's] choice between two fairly conflicting views, even

though the court would justifiably have made a different choice had the matter been before it de novo.'" *Id.* (quoting *Zoltanski*, 372 F.3d at 1200 (internal quotation omitted)).

## IV. Analysis

Plaintiff argues that the ALJ "erred in failing to give good reasons for assigning little weight to" Dr. Linda Daniels', "a treating source's, medical opinion." *Doc. 28* at 8.

### A. Dr. Daniels' Treatment Notes and Medical Opinion

Plaintiff first visited psychologist Dr. Daniels on May 16, 2013, less than one week after the agency denied Plaintiff's claim at the reconsideration level.[4] *See* AR at 39-42 (claim denied May 10, 2013), 487 (first visit with Dr. Daniels May 16, 2013). It appears from the record that Plaintiff continued her sessions approximately every other week (more or less[5]) until July 11, 2014, for a total of 33 visits. AR at 476-92. During her initial visit with Plaintiff on May 16, 2013, Dr. Daniels recorded several observations about Plaintiff in a "Mental Status Exam," including that she was oriented as to time, place, person, day, date, and year, she was cooperative but irritable, guarded, and annoyed, could initiate and hold conversation and had variable eye contact, but was negativistic/critical, defensive, hurried, and her conversation was "disjointed; not always sure who is being referenced."[6] AR at 487. Dr. Daniels noted that Plaintiff had no difficulty recalling her personal history or the recent past, she was coherent, on topic,

---

[4] The Court notes that while Plaintiff's physicians consistently note that she "admits anxiety" and sometimes depression at her doctor visits, there is no evidence in the record that she sought psychiatric treatment prior to her sessions with Dr. Daniels or ever took medication for her anxiety or depression. *See* AR at 187 (during a May 12, 2010 exam, Dr. Kent Richards, M.D., F.A.C.C., noted "She admits to anxiety [and] depression but she refuses [prescription]."), 302, 310, 314, 319, 323, 327, 331, 335, 339, 573.
[5] There are treatment notes from Dr. Daniels for the following dates: in 2013, May 16 and 23, June 1 and 17, July 3 and 22, August 8, 22, and 29, September 5 and 26, October 12, November 1, 15, and 22; in 2014, January 2, 10, and 17, February 2, 21, and 28, March 7, 14, 21, and 28, April 4, May 2, 16, and 23, June 13, 20, and 27, and July 11. AR at 478-92. It appears that she either canceled or was a "no show" for appointments scheduled on June 27, September 12, October 4, and December 6 and 20, 2013, February 14, April 18 and 25, May 30, and June 6, 2014. AR at 478-85.
[6] It is not clear from Dr. Daniels' notes *who* was unsure of who was being referenced – Dr. Daniels or Plaintiff. AR at 487.

8

clear, and appropriate, and she had organized thought processes. AR at 618. She also marked that Plaintiff had poor judgment and difficulty predicting the results of her choices. AR at 618.

Plaintiff came to Dr. Daniels after Plaintiff's husband was incarcerated for raping her granddaughter. AR at 488. While Dr. Daniels' notes are not completely legible, it appears that Plaintiff discussed several recurring issues throughout her sessions with Dr. Daniels, including Plaintiff's anger, feelings of distrust and discouragement, boundary issues with her family, and her desire to have a positive relationship with her grandchildren. AR at 478-92. At the conclusion of her first visit, Dr. Daniels diagnosed Plaintiff with acute stress disorder and depressive disorder NOS. AR at 490. Dr. Daniels never prescribed Plaintiff any kind of medication. *See* AR at 612.

Approximately three months after Plaintiff's last visit with Dr. Daniels, Dr. Daniels completed a "Medical Source Statement: Mental Limitations" form as a treating source on October 3, 2014. AR at 612-18. Under "Treatment and response," Dr. Daniels wrote: "Individual Therapy. Depression [and] inappropriate self-blame are less. Day-to-day functioning is better. No longer overwhelmed by anxiety." AR at 612. Her prognosis of Plaintiff was "guarded due to life-long multiple traumas." AR at 612.

Dr. Daniels also completed three separate charts describing Plaintiff's "mental abilities and aptitudes needed to do" (1) unskilled work,[7] (2) semiskilled and skilled work, and (3) particular types of jobs. AR at 614-15. On the "unskilled work" chart, Dr. Daniels marked "no useful ability to function" – the lowest possible of 5 total ratings – on 12 of the 16 categories; "unable to meet competitive standards" – the next lowest or fourth of the 5 ratings – on 3 of the 16 categories; and "seriously limited, but not

---

[7] The chart on "unskilled work" is exceedingly difficult to read. AR at 614.

precluded" – the third of the 5 ratings – on 1 of the 16 categories. AR at 614. On the "semiskilled and skilled work" chart, she marked "no useful ability to function" on all of the 4 categories listed. AR at 615. On the "particular types of jobs" chart, she marked "no useful ability to function" on 3 of the 5 categories, and "seriously limited but not precluded" on the remaining 2 categories. AR at 615. Dr. Daniels opined that Plaintiff's limitations are "episodically influenced (negatively) by anger [and] frustration, anxiety, intrusive flashbacks, pain, physical weakness [and] episodic inability to function [and] by hypervigilance [and] lack of trust. . . . Hypervigilance [and] anxiety can be expected to increase exponentially[,] negatively affecting ability to focus, attend [and] concentrate." AR at 615. Dr. Daniels remarked that Plaintiff's "Pain [and] physical limitations exacerbate her psychiatric condition." AR at 615. In response to the form question asking her to "[d]escribe the *clinical findings* . . . that demonstrate the severity of your patient's mental impairments and symptoms[,]" Dr. Daniels attached a two page "Mental Status Exam" form she completed at her first session with Plaintiff on May 16, 2013.[8] AR at 612, 617-18.

## B.  The ALJ's Analysis of Dr. Daniels' Opinion

The ALJ's direct treatment of Dr. Daniels' opinion in this case is relatively brief. ALJ O'Melinn mentioned Dr. Daniels twice, both in the context of his RFC determination. First, he noted that "[t]he most recent mental evaluation by" Dr. Daniels "states that [Plaintiff] is responding to treatment and 'no longer overwhelmed by anxiety.'" AR at 22 (citing AR at 612). In his evaluation of Dr. Daniels' opinion, he wrote:

> The medical opinion concerning [Plaintiff's] mental status comes from Linda Daniels, Ph.D[.] but, due to internal inconsistencies and those

---

[8]  The first page of the Mental Status Exam is included with Dr. Daniels treatment notes; it appears that the second page of that form is missing from those notes. *See* AR at 487-92.

>   with the treating notes, it carries little weight. [Plaintiff's] visits began in May 2013, shortly after her husband was incarcerated for molestation of her granddaughter . . . . Stress over caring for her grandchildren is a recurring theme . . . . After July 2014, [Plaintiff's] weekly visits apparently ceased. The next record that appears from Dr. Daniels is a Medical Source Statement, signed on October 3, 2014. In it, Dr. Daniels asserts that [Plaintiff] has no ability to function in several aspects of employment . . . while simultaneously stating that her day-to-day functioning is better and that she is no longer overwhelmed by anxiety . . . . While treating source opinions are generally entitled to controlling weight, they are not consistent with the treating notes or even internally consistent. Therefore, this opinion . . . gets little weight.

AR at 23-24 (citations omitted).

### C.    The Two-Step Inquiry for a Treating Physician's Opinion

An ALJ must consider all medical opinions found in the record. *Padilla v. Colvin*, CIV 14-0495 CG, 2015 WL 10383109, at *4 (D.N.M. June 29, 2015) (citing 20 C.F.R. §§ 404.1527(b), 416.927(b)). "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about" a plaintiff's impairments. 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2). An opinion from a treating physician is generally entitled to more weight than either an examining or an agency physician. *Padilla*, 2015 WL 10383109, at *4 (citing *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004) (internal citations omitted)).

"The ALJ should accord opinions of treating physicians controlling weight when those opinions are well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with other substantial evidence in the record; this is known as the 'treating physician rule.'" *Id.* (citing 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004)). "A treating physician's opinion is accorded controlling weight because the treating physician has a 'unique perspective to the medical evidence that cannot be obtained from the objective

11

medical findings alone or from reports of individual examinations, such as consultative examinations.'" *Id.* (quoting *Doyal*, 331 F.3d at 762 (internal quotation omitted, alteration in original)).

Where the "treating physician's opinion is not supported by medical evidence or consistent with the record," *id.* (citation omitted), it is "still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. [§§] 404.1527 and 416.927.'" *Robinson*, 366 F.3d at 1082 (quoting *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) (quoting Soc. Sec. Ruling, SSR 96-2p, Policy Interpretation Ruling Titles II & XVI: Giving Controlling Weight to Treating Source Medical Opinions, 1996 WL 374188, at *4) (July 2, 1996))). The factors include:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Id.* (quoting *Watkins*, 350 F.3d at 1300-13 (internal quotation omitted)). "When evaluating any medical opinion in the record, the ALJ must give good reasons – reasons that are 'sufficiently specific to make clear to any subsequent reviewers' – for the weight that he ultimately assigns to" those opinions. *Padilla*, 2015 WL 10383109, at *4 (quoting *Langley*, 373 F.3d at 1119 (internal quotation omitted)). The ALJ's "determination, like all of his findings, must be supported by substantial evidence." *Id.*

### 1. The ALJ implicitly found that Dr. Daniels' opinion was not well-supported and/or was inconsistent with other substantial evidence in the record.

Dr. Daniels, a licensed treating psychologist, is an acceptable medical source under the regulations. 20 C.F.R. § 404.1513(a)(2). "As explained above, the ALJ must follow two steps if he wishes to accord a treating physician's opinion less than 'controlling weight.'" *Padilla*, 2015 WL 10383109, at *5. "First, the ALJ must find the opinion to be unsupported by medical evidence or inconsistent with substantial evidence in the record." *Id.* If the opinion is not well-supported by the medical evidence or if it is "inconsistent with other substantial evidence in the record[,]" the ALJ will not give the opinion controlling weight. *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011) (citing *Watkins*, 350 F.3d at 1300 (applying SSR 96–2p, 1996 WL 374188, at *2); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2)).

While the ALJ gave Dr. Daniels' medical opinion "little weight," he never explicitly found that her opinion was not well-supported or was inconsistent with other evidence. *See* AR at 24. Under Tenth Circuit precedent, however, where a reviewing court "can tell from the decision that the ALJ declined to give controlling weight" to a treating physician's opinion, there is no ground for remand. *Mays v. Colvin*, 739 F.3d 569, 575 (10th Cir. 2014) ("Because we can tell from the decision that the ALJ declined to give controlling weight to Dr. Chorley's opinion, we will not reverse on this ground.") (citation omitted); see also *Causey v. Barnhart*, 109 F. App'x 375, 378 (10th Cir. 2004) ("Implicit in the ALJ's decision is a finding that Dr. Waldrop's opinion . . . is not entitled to controlling weight.").

And as more fully described in the next section, the Court is "not troubled by the substance of the ALJ's determination." *Andersen v. Astrue*, 319 F. App'x 712, 721 (10th Cir. 2009). Substantial record evidence does not support the alleged limitations

suggested by Dr. Daniels; in fact, there is "contrary evidence in the record." *Id.* "Accordingly, the ALJ was entitled to give the opinion[ ] less than controlling weight." *Id.* (citing *Langley*, 373 F.3d at 1120). For these reasons, the Court will not reverse the ALJ for failing to make explicit findings regarding his decision to not give Dr. Daniels' opinion controlling weight. ALJ O'Melinn's decision to ascribe the opinion "limited weight" shows that he implicitly declined to give it controlling weight.

> 2. **The ALJ sufficiently explained why he assigned Dr. Daniels' opinion "limited weight," and substantial evidence in the record supports the ALJ's findings.**

At the second step of the analysis of a treating physician's opinion, the ALJ "must determine what deference he will accord the opinion after considering the six deference factors listed above, and state sufficiently specific reasons for that determination." *Padilla*, 2015 WL 10383109, at *5; *see also* 20 C.F.R. §§ 404.1527, 416.927. The Tenth Circuit has "held that it is not necessary for the ALJ to address each factor expressly or at length[,]" provided that the ALJ offers "'good reasons in his decision for the weight he gave to the'" medical opinion. *Mounts v. Astrue*, 479 F. App'x 860, 866-67 (10th Cir. 2012) (quoting *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) (internal citation omitted)). "What matters is that the decision is 'sufficiently specific to make clear to any subsequent reviewer[ ] the weight the adjudicator gave to the . . . opinion and the reasons for that weight.'" *Id.* (quoting *Oldham*, 509 F.3d at 1258 (internal quotation omitted)).

Here the ALJ did not address the factors expressly, but he did provide sufficiently specific reasoning for his decision that the Court can understand why he assigned Dr. Daniels' opinion limited weight. First, he noted that Plaintiff saw Dr. Daniels on a weekly

14

basis for approximately 14 months. AR at 23; *see also* 20 C.F.R. §§ 404.1527(c)(2)(i), 416.927(c)(2)(i) ("Length of the treatment relationship and the frequency of examination"). Second, it is clear that the ALJ's examination of the record revealed that while Plaintiff had a long history of admitting anxiety and/or depression, she never sought nor received any kind of prescription medication to help deal with those conditions, nor is there evidence that she sought mental health treatment for anxiety or depression prior to her sessions with Dr. Daniels. The ALJ cites to medical records from Plaintiff's physicians, as well as to the May 2013 State Agency psychological consultation and Dr. Daniels' treatment notes and Medical Source Statement, all of which reflect Plaintiff's history of reporting anxiety and often depression, along with her lack of therapy and/or psychotropic medication prescriptions. AR at 18, 23 (citing medical records from FESSS Clinic); *see also, e.g.*, AR at 302, 310, 314, 319, 323, 327, 331, 335, 339 (medical records from FESSS Clinic dated October 2011 through May 2012 noting that Plaintiff "admits" anxiety and often depression), 465, 487-92, 612; *see also* 20 C.F.R. §§ 404.1527(c)(2)(ii), 416.927(c)(2)(ii) ("Nature and extent of the treatment relationship").

Third, the ALJ found that Dr. Daniels' medical opinion was both internally inconsistent and was inconsistent with her treatment notes. AR at 24. Thus, the ALJ's discussion demonstrates that Dr. Daniels did not support her opinion with relevant evidence. *See* 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3) ("Supportability. The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight [the ALJ] will give that opinion."). For example, the ALJ noted that where Dr. Daniels "assert[ed] that [Plaintiff] has no ability to

function in several aspects of employment . . . while simultaneously stating that her day-to-day functioning is better and that she is no longer overwhelmed by anxiety[,]" her opinion was internally inconsistent. AR at 24 (citing AR at 612, 614). The Court finds that the treatment notes, which reflect Plaintiff's stress regarding her granddaughter's rape and over caring for her grandchildren, do not necessarily support Dr. Daniels' later medical opinion concerning Plaintiff's ability to work. AR at 23 (citing AR at 479, 486). Dr. Daniels did not, therefore, support her opinion with relevant evidence.

Finally, it seems clear to the Court that ALJ O'Melinn implicitly considered the fourth deference factor regarding consistency between Dr. Daniels' opinion and record evidence. 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4) ("Consistency. Generally, the more consistent an opinion is with the record as a whole, the more weight [the ALJ] will give to that opinion."). Dr. Daniels marked that Plaintiff would have "[n]o useful ability to function" in almost 19 of the 25 total categories. *See* AR at 614-15. It is true that Plaintiff was not working for the majority of the time that she saw Dr. Daniels. *See* AR at 15 (noting that Plaintiff did not work in 2013), 487 (documenting Plaintiff's first visit on May 16, 2013). The ALJ noted, however, that Plaintiff began working part time again in May 2014, shortly before she stopped seeing Dr. Daniels. *See* AR at 15 (noting Plaintiff's employment as a caregiver through Mountain Shadows Home Care beginning in May 2014), 478 (documenting Plaintiff's final visit on July 11, 2014). It would seem, therefore, that Dr. Daniels' opinion is inconsistent with relevant record evidence, since Plaintiff did have sufficient ability to function appropriately at work. *See* 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4). Moreover, as the ALJ noted in another portion of the decision, Plaintiff has a fairly consistent history of working without significant incident.

AR at 19 (describing an isolated incident of "insubordination" among other record evidence that Plaintiff has only mild difficulties in social functioning). The Court agrees that Dr. Daniels' opinion is inconsistent with "the record as a whole . . . ." 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4).

Ultimately, the Court finds that the ALJ gave "good reasons" for his decision to give Dr. Daniels' medical opinion "little weight." *See Mounts*, 479 F. App'x at 866-67 (quotation omitted). The Court further finds that substantial evidence in the record supports the ALJ's findings. *See Lax*, 489 F.3d at 1084 (citation omitted).

### D. Plaintiff's Additional Points of Error

Plaintiff asserts that the ALJ erred in (1) failing "to identify any inconsistencies between Dr. Daniels'[ ] opinion and [her] treatment notes"; (2) concluding that the "opinion is internally inconsistent"; and (3) failing "to give good reasons for rejecting Dr. Daniels'[ ] opinions that [Plaintiff's] psychiatric conditions worsened her physical problems or that she would likely be absent from work more than four time[s] per month." *Doc. 28* at 11–12. The Court addressed Plaintiff's first two arguments above in Section (IV)(C)(2) and disagrees that the ALJ failed to identify inconsistencies between Dr. Daniels' opinion and her treatment notes or in concluding that the opinion was internally inconsistent.

The Court also disagrees that the ALJ summarily rejected Dr. Daniels' opinion that Plaintiff's "psychiatric conditions worsened her physical problems or that she would likely miss more than four days per month of work." AR at 11. First, Plaintiff misstates Dr. Daniels' words: Dr. Daniels stated that Plaintiff's "[p]ain [and] physical limitations exacerbate her psychiatric condition[,]" not the other way around as Plaintiff asserts.

*See* AR at 615; *Doc. 28* at 11. Regardless, the ALJ thoroughly considered the other medical evidence and opinions in the record and found that Plaintiff's "residual functional capacity assessment is supported by laboratory results and signs that consistently rank the underlying medically determinable impairments as mild . . . ." AR at 24; *see also Best-Willie v. Colvin*, 514 F. App'x 728, 732 (10th Cir. 2013). What's more, Plaintiff's "present employment as a caretaker is, likewise, prima facie evidence that she is physically capable of the exertion required and, by inference, could also work at lower exertional levels." AR at 24. There was no evidence in the record that Plaintiff was missing four days per month of work at her current place of employment. Consequently, the Court finds that Dr. Daniels' opinion was not well-supported by the record evidence, and the Court finds no error with the ALJ's decision.

## V.    Conclusion and Recommendation

The Court finds that the ALJ followed the rules of law and sufficiently explained the reasons behind his decision to afford Dr. Daniels' opinion limited weight. The Court also finds that the ALJ's findings are supported by substantial evidence.

**IT IS HEREBY RECOMMENDED** that Plaintiff's Motion to Remand be **denied**.

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).  **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition.   If no objections are filed, no appellate review will be allowed.**

_____
UNITED STATES CHIEF MAGISTRATE JUDGE